## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **JOHN DOE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | Case No.: |
| ) | |
| ) | |
| **JOHN M.  BURKMAN JR.** ) | |
| **(AKA JACK BURKMAN),** ) | |
| ) | |
| **JACOB WOHL, and** ) | |
| ) | |
| **JM BURKMAN & ASSOCIATES, LLC,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff, John Doe[1], files this Complaint and states the following in support thereof.

1. This is an action for damages and equitable relief.

## PARTIES

2. Two of the Defendants, Mr. Wohl and Mr. Burkman, are far-right conspiracy theorists and fraudsters who have been responsible for multiple plots to entrap, frame, and wrongfully accuse public and private figures for fictitious sexual assaults. They are banned from Twitter, resulting in their current use of Substack through which they host Youtube videos. "Project 1599" is a group created by Mr. Burkman and Mr. Wohl, part of an emerging group of right-wing so called "pedophile hunters", operating out of 1599 N Colonial Terrace, Arlington, VA 22209-1426. Mr.

---

[1] Plaintiff will promptly file a motion for leave of Court for Plaintiff to be able to proceed in this case under the pseudonym "John Doe."  For reasons apparent from the detailed allegations in the Complaint, continued public disclosure and association of his name with the wrongful conduct that Defendants engaged in towards him would, we respectfully submit, cause him to suffer additional irreparable harm.  Defendants are aware of Plaintiffs' identity.

Wohl is a resident of the Commonwealth of Virginia.  Mr. Burkman is a resident of the Commonwealth of Virginia.

3. J.M. Burkman & Associates, LLC, is a limited liability company formed under the laws of the Commonwealth of Virginia.  According to information on file with the Virginia State Corporation Commission, its principal office is in Arlington, VA 22209.

## JURISDICTION AND VENUE

4.   This Court has jurisdiction over this matter under 28 U.S.C. § 1331, based upon the Court's federal question jurisdiction in relation to Count VI (Plaintiff's claim against the Defendants under 18 U.S.C. § 1962).

5. This Court also has supplemental jurisdiction over the remaining Counts in the Complaint under 28 U.S.C. § 1367(a).

6. As alleged herein, Defendants conspired to commit, and carried out a substantial part of their wrongful acts in Arlington, Virginia. to carry out these wrongful acts  Moreover, the principal office for J.M. Burkman & Associates is located in Arlington.  As such, venue properly lies with this Court under 28 U.S.C. § 1391(b)(2) – (3).

## PROCEDURAL HISTORY

7. On July 1, 2022, Plaintiff filed an action against the Defendants in the Arlington Circuit Court (Virginia).  Plaintiff subsequently filed his First Amended Complaint in that case, which included Counts I – V of the current Complaint. Pursuant to an Order of the Arlington Circuit Court, that case was subject to sealing and was in fact sealed, due to the highly confidential and extremely prejudicial nature of the issues concerning the Plaintiff which public disclosure thereof would cause.

8. On August 3, 2023, the Arlington Circuit Court granted Plaintiff's Motion for Voluntary Nonsuit.  Plaintiff's inclusion of Counts I – V in this action is timely under the provisions of Va. Code § 8.01-229, as they have been re-filed within six months of the date that the nonsuit Order was entered.

9. Plaintiff also now brings Count VI for Defendants' violations of 18 U.S.C. § 1962, and Count VII for their violation of Va. Code § 8.01-40.

### FACTS

**A. "Project 1599" - Defendants' Enterprise for Illegal Racketeering Activity.**

10. On October 24, 2022, Defendants Wohl and Burkman each plead guilty to one felony count of telecommunications fraud in violation of Ohio Revised Code, § 2913.05, in the Cuyahoga County (Ohio) Court of Common Pleas. *See* Exhibit A (excerpts from the docket for their respective criminal cases in Cuyahoga County, Ohio). Defendants Wohl and Burkman committed these crimes in Ohio on or about August 26, 2020.

11. Through this scheme, Defendants Wohl and Burkman targeted African American voters in Ohio through an illegal robocall scheme in which they communicated false information to try and pressure them not to vote. *See* Exhibit A (*AG Yost's Statement on Jacob Wohl and Jack Burkman Pleading Guilty to Telecommunications Fraud*, News Release, Office of the Ohio Attorney General, 10/24/2022).

12. Ohio Revised Code, § 2913.05 provides:

(A) No person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, or telecommunications service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud.

The criminal conduct of Defendants Wohl and Burkman would also be indictable as wire fraud under 18 U.S.C. § 1343 (Fraud by wire, radio, or television) ("Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.").

13. Defendants Wohl and Burkman are also facing criminal prosecution in Michigan. They were each indicated on four felony counts, which include two counts (each) of using a computer to commit a crime:

> On or about August 20, 2020, each of the Defendants "did use a computer program, computer, computer system, or computer network to commit, attempt to commit, conspire to commit, or solicit another to commit Election Law-Bribing/Intimidating Voters, in violation of MCL 168.932(a); contrary to MCL 752.796, and MCL 752.797(3)(d). [752.79730)".[2]

Defendants targeted African American voters in Detroit, Michigan, through an illegal robocall scheme in which they communicated false information to try and pressure them not to vote. This criminal conduct of Defendants Wohl and Burkman would also be indictable as wire fraud under 18 U.S.C. § 1343.

14. Defendants Wohl, Burkman, and J.M. Burkman & Associates, LLC, have also been fined $5,134,500 by the Federal Communications Commission ("FCC") for willful and repeated violations of section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act,

---

[2] Defendants appealed an Order of the Michigan trial court which denied their motions to quash and to dismiss the charges against them, and their appeal is pending before the Michigan Supreme Court.

4

47 U.S.C. § 227(b)(1)(A)(iii), and section 64.1200(a)(1)(iii) of the Commission's rules, 47

CFR § 64.1200(a)(1)(iii).

15. The FCC's Forfeiture Order (Exhibit B) explained the contents of the message used

by Defendants in their illegal robocall scheme:

> "The messages told potential voters that if they voted by mail, their "personal information will be part of a public database that will be used by police departments to track down old warrants and be used by credit card companies to collect outstanding debts."[13] **The recorded messages identified Burkman and Wohl by name and claimed to be made by "Project-1599," a fictitious organization run by Respondents.**"[14] *Id.* (p. 3) (Emphasis added).

The FCC explained that "The recordings themselves refer to **Project-1599** as "**the civil**

**rights organization founded by Jack Burkman and Jacob Wohl**." *Id*. (p. 3) (Emphasis

added).

16. In determining that Defendants Wohl, Burkman, and J.M. Burkman & Associates

should be jointly and severally liable for the fine, the FCC specifically found:

> 50. The Evidence Supports Finding Burkman and Wohl Jointly and Severally Liable with Burkman & Associates. T**he evidence shows that Burkman, Wohl, and Burkman & Associates were jointly and severally involved in making the robocalls at issue. Respondents do not challenge the Bureau's personal liability analysis**. As discussed in the Notice,[114] **Burkman acknowledged that he prepared the messages and caused them to be sent**.[115] E-mail exchanges with the dialing platform further reflect that **Burkman had a key role in deciding the content of the messages and the area codes to which the calls would be sent**.[116] Burkman's personal wireless phone number was listed as the calling party on the recipients' caller ID. **The recorded messages also identified Burkman and Wohl by name. Wohl personally publicly claims to be a co-founder of "Project-1599," which is the moniker given to the robocalling campaign**.[117] **There is ample evidence that Wohl also played a key role in determining who would receive the robocalls**.[118] **Wohl acknowledged creating the calls and causing them to be transmitted. Burkman & Associates paid for the dialing platforms that physically dialed the robocalls**.[119] Accordingly, the evidence shows that **Burkman, Wohl, and Burkman & Associates were jointly and severally involved in making the robocalls at issue** and we will hold each liable for a forfeiture of $5,134,500."

17. Defendants Wohl, Burkman, & J.M. Burkman & Associates have also been found liable for violating the Voting Rights Act and the Ku Klux Klan Act because of their illegal robocall scheme.  *See* Exhibit C (Decision and Order of District Judge Victor Marrero, granting summary judgment against Defendants, Case 1:20-cv-08668-VM-OTW; *National Coal. on Black Civic Participation v. Wohl,* No. 1:20-cv-8668, 2023 WL 2403012, at *37 (S.D.N.Y. Mar. 8, 2023)) .  The District Court's reasoning and findings include, in relevant part, the following:

- Citation to an article in the Washington Post, which highlighted **Defendant Wohl's draft plan and his goal of raising money in order to  "disseminate false information about Democratic presidential candidates to swing political betting markets**." (p. 5)

- Defendants **Wohl and Burkman hired a third-party to "transmit through a robocall, misleading and false messages carefully crafted to dissuade tens of thousands of voters across the United States from voting by mail**." (p. 6)

- Defendant **Burkman paid the third-party vendor money from the bank account of J.M. Burkman & Associates, LLC**, to carry out their scheme (p. 6);

- On August 26, 2020, **through an account held by Burkman Associates**, the third-party vendor transmitted the Robocall to 85,307 phone numbers across the country, including 5,494 calls with New York area codes.  (p. 8)

- Ultimately, the Robocall was distributed to zip codes in the following cities:  Cleveland, Ohio;  Minneapolis,  Minnesota; Chicago, Illinois; Pittsburgh and Philadelphia, Pennsylvania; Detroit, Michigan;  New York, New York;  and  Arlington, Virginia. (p. 8)

- the statements in the Robocall were false.(p. 77)

18. The District Court also cited a Prospectus, prepared by Defendant Wohl, for the Arlington Center for Political Intelligence ("ACPI"), which outlined the strategy for their illegal scheme.  According to Wohl, Defendants intended to influence mainstream media by, in part, "**mak[ing] shit up**," and "**misdirect[ing] with details aimed to confuse, leading to more inquiry**." (p. 5) (Emphasis  added).

19. Earlier in the case, in granting a Temporary Restraining Order against Defendants Wohl, Burkman, and J.M. Burkman & Associates, the District Court described their conduct in part as follows:

> "[T]he means [Burkman and Wohl] use to intimidate voters, though born of fear and similarly powered by hate, are not guns, torches, burning crosses, and other dire methods perpetrated under the cover of white hoods," Marrero wrote in his ruling, filed days before Election Day 2020. "**Rather, [Burkman and Wohl] carry out electoral terror using telephones, computers, and modern technology adapted to serve the same deleterious ends**."

In sum, in thousands of instances across multiple states, Defendants Wohl, Burkman, and J.M. Burkman & Associates associated and conspired to communicate false information which constituted wire fraud in violation of the criminal laws of the laws of Ohio and Michigan, which would also subject to indictment under 18 U.S.C. 1343.

20. They endeavored to – according to Defendant Wohl – "make shit up" and communicate such false information electronically, in part to mislead voters, the larger public, to generate publicity through the media, and also to raise money to continue to fund their illegal acts, through Project 1599.

21. Defendants did this through their enterprise – Project 1599.

22. Defendant John Burkman also did this through the company of which he is the sole legal member: J.M. Burkman & Associates, LLC.

**B. Defendants have continued to use Project 1599 for an unlawful purposes and committed criminal, predicate acts in so doing..**

23. In 2021, Defendants continued to use Project 1599 to, as Wohl put it, "make shit up" and generate publicity and revenue through such acts. As explained below, a critical casualty from this ongoing, illegal scheme was Plaintiff.

24, As part of Project 1599, Defendants developed and enacted a scheme to place false profiles of women on applications such as Tinder (or other internet-based platforms). On August 29, 2021, Defendants filmed Plaintiff, an adult male who was not married, arriving for a Tinder date at a private home located at 696 Heathwalk Mews, Gaithersburg, Maryland 20878, in response to a profile for "Sarah", who was identified as being 36 years of age and having a child.

25.  Since he first saw her profile on Tinder, Plaintiff had spoken with Sarah on the phone on two or three occasions. Plaintiff did not use sexual language in these communications, nor were any pictures exchanged or solicited.  Moreover, Plaintiff always understood Sarah to be 36 years old.

26. Once Plaintiff arrived at the private residence in Gaithersburg, he was greeted at the door by a woman whom Plaintiff believed was the woman he was expecting to meet (i.e., Sarah, age 36).

27. At the invitation of the woman who greeted him, Plaintiff went inside the residence. Shortly after Plaintiff entered, and realized that there were hidden cameras in the apartment (as the woman went upstairs), Defendants Wohl, Berkman, and at least three other males – one or more of whom were armed with handguns -  took positions in front of him, to his immediate left, and on the stairs leading down to the front door.

28. Thereafter, Defendants Wohl and Burkman – with cameras rolling and in a very aggressive manner – accused Plaintiff of coming to the residence, intending to have sex with an underage teen.

29. In response, Plaintiff explained repeatedly that he  was coming to meet Sarah, age 36.

30. After several minutes of heated discussion, Plaintiff stated that he would call the police, because what they had done to him was wrong and illegal.

31. In response, realizing that Plaintiff was telling them the truth and that they had engaged in wrongful and even potentially criminal conduct by entrapping him, Defendant Burkman reassured Plaintiff, stating as follows:

"We're listening to your side of the story" – "we haven't done anything" – "we are just investigating";

"We stand persuaded this is just an innocent mixup";

"We're not using anything";

"Don't worry";

"This is over - you'll not hear anything about it again";

"We stand persuaded";

"It's innocent mixup, thank you"; and

"█████ look at me, this is over, it's over".

32. Defendants Wohl and Burkman  knew that Plaintiff did not have reason to believe that the woman he was coming to meet was age 16 (which she was not), because they had not listed her age on a Tinder ad which they had apparently posted at least one month earlier (which was later removed by Tinder).  Importantly, to have an ad listed on Tinder, one must represent that she (or he) is at least 18 years old.

33. Defendants Wohl and Burkman also knew that Plaintiff did not have reason to believe that the woman he was coming to meet was age 16, because they never told Plaintiff that she was allegedly 16 (which again, she was not, as she was in fact more than 20 years old). Thereafter, as the Plaintiff attempted to leave the residence, Defendant Burkman called out, "**Well, we won't use the footage if you don't go to the police**." (Emphasis added). The man blocking the door then stepped aside so Plaintiff could exit.

9

34. After Plaintiff left, Defendants Wohl and Burkman, along with the other persons who were inside the apartment, discussed the situation.  During that discussion, Burkman explained that he had made the "tactical call" to reassure Plaintiff that the situation was over and that nothing would happen.  Wohl further stated that the police would come to the residence based upon a disturbance call, and that they could not afford for such to occur because they had too many other "predators" to try and catch.

35. They also discussed whether Plaintiff had reason to think that the woman he was coming to meet was (purportedly) 16 years old, and stated that they felt that Plaintiff did not believe that the female was 16 years old.

36.  Importantly, the scenario that Defendants constructed was entirely false.  Moreover, under Maryland law, it is not a crime for an adult to have consensual sexual relations with a female who is 16 years of age or older.  *See* Md. Ann. [Crim.] Code §§ 3-301, 3-304 (2018); Md. Ann. [Crim.] Code §§ 3-301, 3-307 (2018); and Md. Ann. [Crim.] Code §§ 3-301, 3-308 (2018).

37. While Plaintiff – who lived and worked in Maryland at that time had no reason to think that the woman he had come to meet was purportedly 16 (which she was not) – there was nothing illegal about anything that he said or did that day, even under the false scenario that Defendants manufactured.

38. Despite the assurances that they repeatedly provided to Plaintiff  before he left the residence on August 29th that the situation "was over" and that "nothing would happen" and that this was all just an "innocent mixup," on February 16, 2022, Defendants Wohl and Burkman, published on You Tube a video entitled: "Predator DC" – "Episode Four".

39. The first portion of this video was about the aforementioned incident with Plaintiff, and was labeled - "Across the Border and Into a Teen". Plaintiff was working as an immigration

attorney at the time, and the second portion of the video featured an undocumented immigrant. Upon information and belief, Defendants sequenced the video in this manner and used these labels in order to further target Plaintiff and the legal work that he was then performing on behalf of immigrants.

40. In this video, Defendants Wohl and Burkman made false and defamatory statements of fact which referenced Plaintiff either directly or by implication, and which otherwise presented Plaintiff in a false light.

41. On Defendant Wohl's website he posted a "press release" of the release of the video, falsely stating that Plaintiff was married.  Upon information and belief, Defendant Wohl did this after seeing a photo of Plaintiff online, in which Plaintiff was wearing his Marine Corps dress blues with his wife at that time, who was African American. However, Plaintiff was no longer married at the time of the incident in question, on August 29, 2021, or subsequent thereto on February 16, 2022, when the video was publicized. The video and its associated postings by Defendants included the following:

- "Our nation's capital is infested with deviants, perverts, and pedophiles of all stripes" – which clearly referenced Plaintiff by implication;

- The display of Plaintiff's face, first name, occupation, and location;

- Reference to Plaintiff as being a lawyer and a member of the D.C. bar;

- A photo of Plaintiff along with text which referenced Johns Hopkins University; and

- Referencing Plaintiff, stating - "he comes to our sting house to have sex with an underage teen who he's just met on Tinder".

42. Defendants' publication of this video on You Tube was produced – with opening graphics and Wohl and Burkman, narrating portions of the video and then, at the end, discussing

the video in a studio-type background.  During this portion of the video, Defendants Wohl and Burkman made the following false, defamatory statements of fact about Plaintiff:

> "his artifice may convince his young victims but it shows us" (Wohl);

> "he was coming for an underage teen" (Wohl);

> "█████ oh little █████…you thought that by screaming and yelling you could get out of being a pedophile", "you could get out of your crimes" (Burkman);

> "We will never stop in pursuit of the truth, █████ and the truth is, that you are a pedophile, and you are a danger to society" (Burkman);

> "Predators like █████" (Burkman)

> "You are nothing but a man that intended to prey upon a 16 year old girl" (Burkman); and

> "You disgust me, you disgust America" (Burkman); and

> "You will not stop us from exposing predators just like you".

43. The video further showed that during the incident of August 29, 2021, while Burkman told Plaintiff initially that he was free to go, Plaintiff was actually surrounded by some seven adult males, to wit: Wohl and Burkman (immediately in front of him), a cameraman, another male adjacent to Plaintiff's left side by the stairs in a tactical vest, another male in front of the plaintiff wearing ballistic gloves, and another male blocking Plaintiff near the front door (who was carrying a firearm on his waist, on his right-hand side).  Additionally, the video demonstrates that another camera operator was positioned on the staircase, to the left side of Plaintiff, and two females were also on the same staircase.

44. As a result, Plaintiff felt threatened by this, intimidated, and that he was in fact not free to leave.

45. Shortly after he left the residence on August 29th, Plaintiff contacted the Montgomery County Police Department, but he then decided not to pursue charges because of Defendant Burkman's statement that they would not do anything with the footage if he did not go to the police, and also because he was not completely sure of their actual identity, which they refused to provide.

46. Plaintiff also immediately contacted the FBI about the situation and the conduct of the Defendants.  Plaintiff provided original copies of the various text messages with "Sarah" which had led him to the private residence on August 29, 2021.  Personnel from the FBI advised Plaintiff that such communications did not make any representations of any age for "Sarah" aside from the age listed on her Tinder profile (i.e. 36).  In other words, Plaintiff had no reason to think that Sarah was purportedly 16 years old (which she was not).

47. In the Fall of 2021, Plaintiff was contacted by Defendants Wohl and Burkman, acting as another of-age woman, which Plaintiff knew was the case because he had closed his Tinder account after the incident. Hiding behind their falsely created identity, they requested personal information about Plaintiff's work, and Plaintiff advised them that he had contacted the FBI.

48. Thereafter, Plaintiff suddenly lost his job at John's Hopkins University, for no justifiable reason. Upon information and belief, this occurred because Defendants Wohl and Burkman contacted Johns Hopkins University and falsely told them that they had documentation of their employee engaging in illegal conduct.

49. Plaintiff understands that Defendants Wohl and/or Burkman also attempted to contact Plaintiff's former spouse (whom they knew was African American) in order to try and further damage Plaintiff, and also because she was a person of color.

50. On or about May 23, 2022, Plaintiff was told he had to immediately leave the apartment unit he had moved into just the day before. Plaintiff later learned that this was due to the landlord seeing the video after the posting had become the third result on Google when Plaintiff's name was searched.

51. On June 13, 2022, Plaintiff was notified he was being let go of his current job at an immigration law firm due to an online post, now second in Google results when searching his name. They said they found the site from Plaintiff's prior landlord. It was not safe to return due to threats relating to the post.

52. Defendants Burkman and J.M. Burkman & Associates funded this operation.  By way of example, Burkman paid for the expenses of their use of the apartment at issue on August 29, 2021, as well as for the expenses associated with their having a team of persons there and various forms of video, surveillance equipment, and computer equipment using funds from and otherwise paid through the checking account for J.M. Burkman & Associates, and by using certain equipment which was, upon information and belief, owned by, or otherwise procured through funds from the company.  Upon information and belief, Defendant John Burkman acted through, and paid for all of the other expenses associated with Project 1599 through J.M. Burkman & Associates, including but not limited to the production of the video that they wrongfully published on You Tube against Plaintiff.

53. As Plaintiffs had done before through Project 1599, on and after February 16, 2022, Defendants Wohl and Burkman solicited the public for funds through Predator D.C., including use of the episode which involved Plaintiff (Season 1, Episode 4).  Exhibit D. To achieve this, they published information about Predator D.C. on the internet through which recipients could

locate and access the video featuring Plaintiff, and through which Defendants had falsely called him a pedophile and a predator.

54. As Plaintiffs had done through thousands of illegal robocalls, across multiple states, which contained false information to try and intimidate African American voters and choose not to vote by mail, Defendants Wohl, Burkman, and J.M. Burkman & Associates – through Project 1599 – once again conveyed false information through the internet in order to generate publicity and to raise money to continue to fund Project 1599. This constituted wire fraud and would be subject to indictment under 18 U.S.C. § 1343.[3]

55. Through this conduct, Defendants Wohl, Burkman, and J.M. Burkman & Associates willfully and maliciously caused injury to Plaintiff in his reputation, and in his occupation and profession as a lawyer, as well as his status as a former military officer.

56. Plaintiff has suffered, and continues to suffer, irreparable harm because of the Defendants' wrongful conduct. In sum, Plaintiff's reputation has been irreparably harmed.

57. Plaintiff has also suffered, and continues to suffer, the loss of educational and professional opportunities, as well as the loss of income and diminished capacity to earn money in the future, because of the Defendants' wrongful conduct.

58. Plaintiff has also suffered severe emotional trauma because of the Defendants' wrongful conduct.

---

[3] Defendants' conduct clearly implicated and affected interstate commerce, as they published the video on the internet and sought to raise money in relation to it. Plaintiff, who lived in Maryland at the time, saw the video for the first time in Maryland and upon information and belief, Defendants produced and published it while in Virginia.

**Count I**
**Defamation**
**(All Defendants)**

59. Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 – 58.

60. As referenced above, on February 16, 2022, Defendants Wohl and Burkman published on You Tube a video, entitled: "Predator DC" – "Episode Four".  The first portion of this video was about the incident of August 29, 2021, with Plaintiff, and was labeled - "Across the Border and Into a Teen".

61. In this video, Defendants Wohl and Burkman made numerous defamatory, false statements of fact which directly referenced Plaintiff or which referenced him by implication, and which otherwise presented Plaintiff in a false light.  The video and its associated postings by Defendants included the following false, defamatory statements concerning Plaintiff:

- "Our nation's capital is infested with deviants, perverts, and pedophiles of all stripes" – which clearly referenced Plaintiff by implication;

- Referencing Plaintiff, stating - "he comes to our sting house to have sex with an underage teen who he's just met on Tinder";

- "his artifice may convince his young victims but it shows us" (Wohl);

- "he was coming for an underage teen" (Wohl);

- "███, oh little ███…you thought that by screaming and yelling you could get out of being a pedophile", "you could get out of your crimes" (Burkman);

- "We will never stop in pursuit of the truth, ███, and the truth is, that you are a pedophile, and you are a danger to society" (Burkman);

16

- "Predators like ███████" (Burkman)

- "You are nothing but a man that intended to prey upon a 16 year old girl" (Burkman); and

- "You will not stop us from exposing predators just like you".

62. These statements by Defendants concerning Plaintiff were false and defamatory. As explained above, at all times, Plaintiff believed he was going to meet "Sarah" whom he understood was 36 years old, when he went to the residence in question on August 29, 2021.

63. Moreover, upon information and belief, "Anastasia" – who apparently is the woman who greeted Plaintiff at the front door of the residence and invited him to come in, is an adult female, in her mid to late 20s. .

64. At no time did Plaintiff ever communicate with a female associated with the incident of August 29, 2021, who was a minor.

65. Plaintiff is not a predator. He is not a pedophile. He is not a danger to society.  He did not intend to prey upon an underage teen. He did not engage in any form of criminal conduct.

66. Under Maryland law, it is not a crime for an adult to have consensual sexual relations with a female who is 16 years of age or older.  *See* Md. Ann. [Crim.] Code §§ 3-301, 3-304 (2018); Md. Ann. [Crim.] Code §§ 3-301, 3-307 (2018); and Md. Ann. [Crim.] Code §§ 3-301, 3-308 (2018).  Defendants did not communicate this information when they defamed Plaintiff through the YouTube video at issue, because they wanted viewers of the video to think that Plaintiff was in fact a pedophile and a predator – which is not true.

67. Defendants knew at all times, both before, during, and after the incident of August 29, 2021, that Plaintiff had not engaged in any form of criminal wrongdoing.

68. The above-referenced statements, both on their face and when read within the context within which they were made, are defamatory *per se* and damages are presumed. Accusing someone of engaging in the conduct referenced above, which Defendants did to Plaintiff, are statements which are highly damaging to Plaintiff's reputation, both personally and professionally, and they are so damaging that they would serve to deter third persons from associating or dealing with him.

69. Defendants Wohl and Burkman made these statements and published them to third parties maliciously, with knowledge that they were false or with reckless disregard of their truth or falsity.

70. Alternatively, even if Wohl and Burkman believed the statements were true, but lacked reasonable grounds for such belief, and/or acted negligently in failing to ascertain the facts on which the statements were based.

71. Defendants Wohl and Burkman made the statements with malice towards Plaintiff, with the purpose of damaging his reputation, as well as his ability to work as a lawyer and otherwise to earn a living.

72. Moreover, Defendant J.M. Burkman & Associates, LLC, is liable such conduct because at all times, Defendants, and in particular, Burkman, acted through the company in perpetrating the wrongful acts at issue, which caused damage and permanent harm to Plaintiff. Further, J.M. Burkman & Associates otherwise aided and abetted Defendants' illegal conduct by providing funds to support such, was a part of the illegal conspiracy, and is liable for all of the damages that Plaintiff suffered as a result of the wrongful acts carried out.

73. As a result of Defendants' wrongful actions, Plaintiff has suffered irreparable harm, to include damage to his reputation, as well as lost wages and benefits, and other forms of damages,

to include mental  and emotional trauma, and he is entitled to recover compensatory and punitive damages against Defendants.

**Count II**
**Business Conspiracy (Va. Code §§ 18.2-499 – 500)**
**(All Defendants)**

74. Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 – 58.

75. At all material times, the aforementioned conduct by Defendants was the result of an agreement, which constituted an illegal conspiracy under applicable law, by Defendants Wohl and Burkman to willfully and maliciously injure Plaintiff in his reputation, and in his occupation and profession as a lawyer, as well as his status as a former military officer by making false statements of material fact about him, and by engaging in other forms of wrongful conduct to cause damage to him.

76. The wrongful conduct of Defendants concerning the incident of August 29, 2021, as well as the publication of the You Tube video in question, reflected a common plan and orchestrated scheme by Defendants Wohl and Burkman to cause damage to Plaintiff.

77. They also had months after the incident of August 29, 2021, to consider whether they should make the false statements at issue about Plaintiff and whether to publicize such as well as the video of the incident of August 29th.  After careful planning and production reflecting a news-type format and presentation, Defendants publicized numerous false and defamatory statements against Plaintiff on YouTube as well as through other on-line platforms, including but not limited to Substack, Truth Social, Gab.com, Facebook, and Instagram.

78. Defendants planned this illegal conduct over an extended period of time, and through such conduct, intended to damage and harm Plaintiff's reputation, his occupation and profession as a

lawyer, and in his status as a former military officer, in order to hurt his ability to ever make a living in relation thereto.

79. They also undertook these actions while knowing that the very conduct which they falsely accused Plaintiff of engaging in was not in fact illegal.

80. Defendants Wohl and Burkman, acting in concert with each other and with and through Defendant J.M. Burkman & Associates, LLC, acted intentionally, willfully, maliciously, and in conscious disregard for and with reckless indifference to Plaintiff's rights.

81. Moreover, Defendant J.M. Burkman & Associates, LLC, is liable for all such conduct because at all times, Defendants, and in particular, Burkman, acted through the company in perpetrating the wrongful acts at issue, which caused damage and permanent harm to Plaintiff. As such, J.M. Burkman & Associates, LLC, was a co-conspirator in this wrongful, illegal scheme against Plaintiff and is liable for all of the damages that Plaintiff suffered as a result of the wrongful acts carried out as part of such.

82. As a result of Defendants' wrongful actions, Plaintiff has suffered irreparable harm, to include damage to his reputation, as well as lost wages and benefits, and other forms of damages, to include mental and emotional trauma, and he is entitled to recover compensatory and punitive damages against Defendants.

83. Moreover, under Va. Code §§ 18.2-499 - 500, Plaintiff is entitled to treble damages and the expenses associated with this suit, including recovery of his attorneys' fees and costs.

**Count III**
**Common Law Conspiracy**
**(All Defendants)**

84. Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 – 58.

20

85. By engaging in the aforementioned, wrongful conduct towards Plaintiff, to include the conduct set forth under Count II, Defendants entered into an agreement, which was illegal under applicable common law, to willfully and maliciously injure Plaintiff in his reputation, and in his occupation and profession as a lawyer, as well as his status as a former military officer.

86. Defendants Wohl and Burkman, acting in concert with each other and with and through Defendant J.M. Burkman & Associates, LLC, acted intentionally, willfully, maliciously, and in conscious disregard för and with reckless indifference to Plaintiff's rights.

87. Moreover, Defendant J.M. Burkman & Associates, LLC, is liable for all such conduct because at all times, Defendants, and in particular, Burkman, acted through the company in perpetrating and funding the wrongful acts at issue, which caused damage and permanent harm to Plaintiff. As such, J.M. Burkman & Associates, LLC was a co-conspirator in this wrongful, illegal scheme against Plaintiff and is liable for all of the damages that Plaintiff suffered as a result of the wrongful acts carried out as part of such.

88. As a result of Defendants' wrongful actions, Plaintiff has suffered irreparable harm, to include damage to his reputation, as well as lost wages and benefits, and other forms of damages, to include mental and emotional trauma, and he is entitled to recover compensatory and punitive damages against Defendants.

**Count IV**
**Unreasonable Invasion of Private Life and Invasion of Privacy – False Light**
**(Against All Defendants - Under Maryland Law)**

89. Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 – 58.

90. As referenced above, on February 16, 2022, Defendants Wohl and Burkman published on You Tube a video, entitled: "Predator DC" – "Episode Four". The first portion of this video was

about the aforementioned incident of August 29, 2021, with Plaintiff, and was labeled - "Across the Border and Into a Teen".

91. In this video, Defendants Wohl and Burkman – individually and in concert with each other – showed video of Plaintiff in relation to the incident of August 29, 2021, and made numerous defamatory, false statements of fact which directly referenced Plaintiff or which referenced him by implication.

92. As explained above, at all material times, Plaintiff went to the apartment in question on August 29th in order to meet Sarah, whom he believed was 36 years old. Plaintiff was not married at that time.

93. Plaintiff did not engage in illegal conduct in relation to the incident of August 29th, and Defendants knew that. Despite this, after having months to consider the issue, Defendants chose to publicize it anyway, showing the video featuring the incident in question, and making false and defamatory statements against Plaintiff while so doing.

94. Under these circumstances, Defendants wrongfully publicized private conduct on the part of Plaintiff which was not illegal and which was not a matter of public concern.

95. Moreover, under these circumstances, Defendants painted Plaintiff in a false light, by falsely accusing him of being a pedophile and a sexual predator.

96. Defendants Wohl and Burkman publicized Plaintiff's private conduct without his consent, and they made these false and defamatory statements and published them to third parties maliciously, with knowledge that they were false or with reckless disregard of their truth or falsity.

97. Alternatively, even if Wohl and Burkman believed the statements were true, they lacked reasonable grounds for such belief, and/or acted negligently in failing to ascertain the facts on which the statements were based.

98.  Defendants Wohl and Burkman undertook this course of conduct against Plaintiff with malice towards him, with the purpose of damaging his reputation, as well as his ability to work as a lawyer and otherwise to earn a living.

99. Moreover, Defendant J.M. Burkman & Associates, LLC, is liable for all such conduct because at all times, Defendants, and in particular, Burkman, acted on behalf of and otherwise through the company in perpetrating the wrongful acts at issue, which caused damage and permanent harm to Plaintiff, and J.M. Burkman & Associates otherwise aided and abetted Defendants' illegal conduct by providing funds to support such, and also was a co-conspirator in this wrongful, illegal scheme against Plaintiff and is liable for all of the damages that Plaintiff suffered as a result of the wrongful acts carried out as part of such.

100.  As a result of Defendants' wrongful actions, Plaintiff has suffered irreparable harm, to include damage to his reputation, as well as lost wages and benefits, and other forms of damages, to include mental and emotional trauma, and he is entitled to recover compensatory and punitive damages against Defendants.

### Count V
### Tortious Interference with Contract - Business Expectancy
### (Against All Defendants)

101.  Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 – 58.

102.  On and after August 29, 2021, Defendants knew that Plaintiff worked for Johns Hopkins University and otherwise, that he was a licensed attorney, and that he also performed legal work.

103.  In the Fall of 2021, Plaintiff was contacted by Defendants Wohl and Burkman, acting as another of-age woman, which Plaintiff knew was the case because he had closed his Tinder

account after the incident. They requested personal information about Plaintiff's work, and Plaintiff advised them that he had contacted the FBI.

104.  Thereafter, Plaintiff lost his job at Johns Hopkins University, for no justifiable reason. Upon information and belief, this occurred because Defendants Wohl and Burkman, either directly or indirectly, contacted Johns Hopkins University and falsely told them that they had documentation of their employee engaging in illegal conduct.

105.  On or about May 23, 2022, Plaintiff was told he had to immediately leave the apartment unit he had moved into just the day before. Plaintiff later learned that this was due to the landlord seeing the video which Defendants had publicized about him (i.e., "Predator D.C."), after the posting had become the third result on Google when Plaintiff's name was searched.

106. On June 13, 2022, Plaintiff was notified he was being let go of his current job at an immigration law firm due to an online post about Defendants' publication concerning Plaintiff (i.e., "Predator D.C."), now second in Google results when searching his name. His employer said they found the site from Plaintiff's prior landlord. Plaintiff was told that he could not return to work at the firm due to threats relating to the post.

107. Having knowledge of Plaintiff's employment with Johns Hopkins University, and otherwise that Plaintiff performed legal work and was a licensed attorney, Defendants undertook the aforementioned actions against Plaintiff using unlawful means (i.e., making false and defamatory statements against Plaintiff) with the intent to interfere with and damage Plaintiff's employment with Johns Hopkins University and his ability to otherwise earn a living by performing legal work as a licensed attorney.

108.  Defendants Wohl and Burkman undertook this course of conduct against Plaintiff with malice towards him, with the purpose of damaging his reputation, as well as his ability to work as a lawyer and otherwise to earn a living.

109. Moreover, Defendant J.M. Burkman & Associates, LLC is liable for all such conduct because at all times, Defendants, and in particular, Burkman, acted on behalf of and otherwise through the company in perpetrating the wrongful acts at issue, which caused damage and permanent harm to Plaintiff, and J.M. Burkman & Associates otherwise aided and abetted Defendants' illegal conduct by providing funds to support such, and also was a co-conspirator in this wrongful, illegal scheme against Plaintiff and is liable for all of the damages that  Plaintiff suffered as a result of the wrongful acts carried out as part of such.

110.  As a result of  Defendants' wrongful actions,  Plaintiff has suffered irreparable harm, to include damage to his reputation, as well as lost wages and benefits, and other forms of damages, to include mental  and emotional trauma, and he is entitled to recover compensatory and punitive damages against Defendants.

**Count VI – Violation of 18 U.S.C. § 1962 (c) – (d)**

111.  Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 – 58.

112. As outlined above, Defendants Wohl, Burkman, and J.M. Burkman & Associates carried out numerous instances of racketeering activity as part of "Project 1599" in violation of 18 U.S.C. § 1961.

113. This included thousands of instances of wire fraud as well as extortion.

114.  Defendants' wire fraud is outlined in detail above.  Through their illegal robocall campaign, they targeted African American voters and made false and intimidating statements to them in order to persuade them not to vote.

115. Defendants engaged in thousands of instances of this wrongful, criminal conduct, in multiple states, including but not limited to Ohio, Michigan, and New York.

116. To effectuate such, Defendants used electronic communications to place the illegal calls through which they conveyed false information.  This conduct violated the criminal statutes of Ohio and Michigan and was also subject to indictment under 18 U.S.C. § 1343.

117. This effort was led through the concerted conduct of Defendants Wohl, Burkman, and J.M. Burkman & Associates.  Defendants Wohl and Burkman actively led and otherwise managed Project 1599, and Defendant J.M. Burkman & Associates, LLC, financed it.  Project 1599 was not disorganized or random – rather, it was highly organized and the Defendants associated and used it to perpetrate racketeering activity and to generate publicity and raise money through such conduct.

118. As said by Defendant Wohl, the purpose of Project 1599 was to "make shit up" and to communicate such false information electronically, in part to mislead voters, the larger public, to generate publicity through the media, and also to raise money to continue to fund their illegal acts.  This constituted an illegal purpose in relation to 18 U.S.C. § 1962.

119. As such, Project 1599 constitutes and "enterprise" for purposes of 18 U.S.C. § 1962.

110. The illegal conduct undertaken by the Defendants as part of Project 1599 was not limited to their illegal robocall campaigns.

111. As explained above, Project 1599 also included their wrongful and illegal efforts to entrap Plaintiff in a fraudulently conducted scheme, through which they placed a false profile of

a woman on Tinder.  This led to the above-referenced events of August 29, 2021, in which Defendants, for the first time, falsely accused Plaintiff of coming to the apartment in question to meet an underage teen. Such was not true at all, as Plaintiff told them the truth – that he believed at all times he was coming to meet "Sarah," a single mother who was 36 years old.  There was nothing illegal at all about anything that the Plaintiff did or said in relation to what occurred there.

112. Despite knowing that was the case, and even admitting such to each other after Plaintiff had left the apartment, Defendants proceeded to publish a false and defamatory video of this incident on YouTube.

113. Defendants also sought to generate publicity from, and raise money from this incident, by promoting Predator D.C. on the internet, to include promotion of the video which featured Plaintiff.

114. Through this conduct, Defendants were subject to indictment for wire fraud under 18 U.S.C. § 1343. Upon information and belief, Defendants received money in response to their promotional efforts, which they subsequently used to further finance Project 1599.

115. Further, while Plaintiff  was attempting to leave the apartment in question on August 29, 2021, Defendant Burkman stated:

"**Well, we won't use the footage if you don't go to the police**." (Emphasis added).

116. This statement by Defendant Burkman was wrongful and illegal.  It constituted extortion under Maryland law (see Md. Code Ann., Criminal Law, § 3-705), and therefore, was racketeering activity under 18 U.S.C. § 1961.

117.  By engaging in such conduct, Defendants Wohl, Burkman, and J.M. Burkman & Associates violated 18 U.S.C. § 1962 (c).  They also engaged in a conspiracy to violate 18

U.S.C. § 1962 (c), which violated § 1962 (d).  As a result, they are liable for this wrongful

conduct which was perpetrated upon Plaintiff as part of Project 1599.

118. Although Plaintiff contacted the Montgomery County Police Department shortly after

the incident of August 29, 2021, as explained above, he elected not to press charges because of

the statement by Defendant Burkman that "**Well, we won't use the footage if you don't go to

the police**."  At the time, Plaintiff believed this assurance and relied to his detriment in electing

not to press charges.  Because of that reliance, Defendants Wohl, Burkman, and J.M. Burkman &

Associates were given a thing of significant value: additional time, which afforded them the

opportunity to continue to perpetrate Project 1599. As they admitted, they were very afraid that

Plaintiff would contact the police (as Plaintiff said he would do while in the apartment), and

Burkman's false promise not to do anything with the video if Plaintiff did not contact the police

(which was a threat) induced Plaintiff not to pursue criminal charges.  This additional time, and

the lack of focus from the police, undoubtedly caused Defendants Wohl and Burkman to engage

in further acts of wire fraud, to include their promotion of the episode of Predator D.C. which

featured Plaintiff, which they used to generate publicity and to raise money for the benefit of

Project 1599.

119. Such conduct caused Plaintiff to suffer significant damages. This included his being

forced to leave an apartment he had just recently moved into, in the summer of 2022, which

resulted in moving expenses of approximately $3,000; upon information and belief, the loss of

his paid internship with Johns Hopkings University, and the income (which Plaintiff estimates to

total approximately $15,000); the loss of his job with an immigration firm in New York (which

Plaintiff estimates was between $75,000 - $100,000, annually); and the expenditure of monies to

take steps to try and repair the damage that Defendants caused (e.g., monies required to pursue a

protective order to try and force Defendants to remove the video and other images of him from the internet and otherwise to try and protect his likeness from being further misused and to otherwise lessen the harm that he has suffered (estimated at approximately $30,000).

120. Plaintiff's likeness is a protectable property interest under Va. Code § 8.01-40.  As outlined above, Defendants fraudulent and illegal use of his likeness on the internet to try and raise money and generate publicity caused significant damage to Plaintiff.

121. These losses culminated in Plaintiff having to declare bankruptcy in August 2023, which has ruined his credit and will  continue to damage his future professional opportunities as a lawyer.[4]

**Count VII – Violation of Va. Code § 8.01-40**
**(Against All Defendants)**

122.  Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 – 58.

123.  As outlined above, on and after February 16, 2022, Defendants Wohl and Burkman used Plaintiff's name and picture without his written consent.

124. Defendants did this by publishing such on the internet, to advertise and promote Predator D.C. (which was part of Project 1599), to include the video which featured Plaintiff, through which they sought to generate publicity and also raise money to further fund Project 1599.

125. Defendants engaged in this conduct with knowledge that they did not have the written consent of Plaintiff to use his name and likeness in such manner.

---

[4] Plaintiff's initial lawsuit was disclosed in bankruptcy and was discharged, prior to filing this Complaint.

126.  Defendants Wohl and Burkman undertook this course of conduct against Plaintiff with malice towards him, with the purpose of damaging his reputation, as well as his ability to work as a lawyer and otherwise to earn a living.

127. Moreover, Defendant J.M. Burkman & Associates, LLC is liable for all such conduct because at all times, Defendants, and in particular, Burkman, acted on behalf of and otherwise through the company in perpetrating the wrongful acts at issue, which caused damage and permanent harm to Plaintiff, and J.M. Burkman & Associates otherwise aided and abetted Defendants' illegal conduct by providing funds to support such, and also was a co-conspirator in this wrongful, illegal scheme against Plaintiff and is liable for all of the damages that  Plaintiff suffered as a result of the wrongful acts carried out as part of such.

128. As a result of  Defendants' wrongful actions,  Plaintiff has suffered irreparable harm, to include damage to his reputation, as well as lost wages and benefits, and other forms of damages, to include mental  and emotional trauma, and he is entitled to recover compensatory and punitive damages against Defendants.

WHEREFORE, as a result of the conduct of each of the Defendants, Plaintiff requests that this Court enter judgment against Defendants Wohl, Burkman, and J.M. Burkman & Associates, LLC, and award damages and other relief as follows:

A. Award compensatory damages against the Defendants, jointly and severally, in an amount to be determined at trial, in excess of $2,500,000, for Counts I – V, and VII; ;

B. Award treble damages against Defendants for Count II, jointly and severally, in an amount to be determined at trial, of at least $7,500,000;

C. Award damages to Plaintiff and against Defendants for Count VI, jointly and severally, in an amount to be determined at trial, in excess of $148,000, as well as treble damages, totaling at least $444,000;

D. Award punitive damages against Defendants for Counts I, III, IV, V, and VII,  jointly and severally, in the amount of $350,000;

E. Award Plaintiff equitable relief, to include an Order directing Defendants not to publish or otherwise distribute the video or other pictures of Plaintiff which are at issue;

F. Award Plaintiff his reasonable attorneys' fees pursuant to Va. Code §§ 18.2-499 – 500 and 18 U.S.C. § 1964; and

G. Otherwise award Plaintiff his costs for bringing this action, pre- and post-judgment interest, and any other relief which this Court deems to be fair and just.

## **DEMAND FOR JURY TRIAL**

Plaintiffs respectfully demand trial by jury on all issues so triable.

Respectfully Submitted,

/s/ *John B. Flood*

_____

John B. Flood, Of Counsel (VSB No. 79813)
BERLIKLAW, LLC
1818 Library Street, Suite 500
Reston, Virginia  20190
Tel: (703) 722-0588
LBerlik@berliklaw.com
JFlood@berliklaw.com
*Counsel for Plaintiff*