IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:24-cv-00181 (RDA/WBP) |
| ) | |
| JOHN M. BURKMAN JR. (AKA JACK ) | |
| BURMAN), *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants John M. Burkman Jr., Jacob Wohl, and JM Burkman & Associates, LLC's (collectively, "Defendants") Motion to Dismiss ("Motion"). Dkt. 19. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion, Defendants' Memorandum in Support (Dkt. 20), and Plaintiff John Doe's ("Plaintiff") Opposition (Dkt. 23), the Court GRANTS the Motion to Dismiss for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

Plaintiff alleges that Defendants Wohl and Burkman "are far-right conspiracy theorists and fraudsters" who created "Project 1599," a political group that operates in Arlington, Virginia. Dkt. 1 ¶ 2; Dkt. 1-3 at 5 (describing Project 1599 as "a political organization that was launched as a

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

'candidate vetting apparatus,' primarily targeting Democratic candidates and seeking to influence the November 2020 United States presidential election"). Plaintiff further alleges that Defendants have conducted two unlawful schemes through Project 1599: a robocall scheme targeting African American voters and a YouTube video series entitled Predator D.C., in which Plaintiff was falsely accused of being a pedophile. Dkt. 1 ¶¶ 10-58.

1. Robocall Scheme

In August 2020, Defendants Wohl and Burkman developed and implemented a robocall scheme in which they communicated false information to thousands of African American voters across the United States to pressure them not to vote by mail. *Id.* ¶¶ 11, 13, 17, 19.

Based on this conduct, Defendants subsequently faced criminal and civil consequences. Defendants Wohl and Burkman pleaded guilty to one felony count of telecommunications fraud in the Cuyahoga County (Ohio) Court of Common Pleas on October 24, 2022. *Id.* ¶ 10. Wohl and Burkman were also indicted on four felony counts in Michigan state court. *Id.* ¶ 13; *id.* at 5 n.2 (explaining that Defendants' appeal of the denial of their motion to quash and to dismiss the charges was pending before the Michigan Supreme Court at the time this case was filed). Defendants Wohl, Burkman, and J.M. Burkman & Associates, LLC were also found liable for violating the Voting Rights Act and the Ku Klux Klan Act with their robocall scheme in the Southern District of New York. *Id.* ¶ 17; *National Coal. on Black Civic Participation v. Wohl*, No. 1:20-cv-8668, 2023 WL 2403012, at *37 (S.D.N.Y. Mar. 8, 2023) (granting the plaintiffs' motion for summary judgment as to liability on all claims). Finally, the Federal Communications Commission (FCC") fined Defendants $5,134,500 for willful and repeated violations of the Telephone Consumer Protection Act. *Id.* ¶ 14.

The FCC's Forfeiture Order discussed the contents of the message used in the robocall scheme, stating that the recorded messages claimed to be made by Project 1599 and identified

2

Defendants Wohl and Burkman by name. *Id.* ¶ 15. The FCC specifically found that Burkman and Wohl had key roles in preparing the messages, deciding their content, determining who would receive the robocalls, and causing the calls to be transmitted. *Id.* ¶ 16. The FCC also found that Defendant Burkman & Associates paid for the dialing platforms that physically dialed the robocalls. *Id.*

With the robocall scheme, Defendants "intended to influence mainstream media by, in part, 'mak[ing] shit up,' and 'misdirect[ing] with details aimed to confuse, leading to more inquiry.'" *Id.* ¶ 18 (quoting *Wohl*, 2023 WL 2403012, at *2).

### 2. Predator D.C.

The Complaint further alleges that, as part of Project 1599, Defendants "caused injury to Plaintiff in his reputation, and in his occupation and profession as a lawyer, as well as his status as a former military officer" by publishing a YouTube video in which they falsely accused him of being a pedophile "that intended to prey upon a 16 year old girl." *Id.* ¶¶ 23, 42, 55.

On August 29, 2021, Defendants lured Plaintiff to a private residence for a date with "Sarah," a woman whose profile Plaintiff saw on the application Tinder and who had represented to Plaintiff that she was 36 years old and had a child. *Id.* ¶¶ 24-25. Prior to going to the residence, Plaintiff spoke with Sarah on the phone "on two or three occasions" and did not use sexual language or solicit or exchange any pictures during those conversations. *Id.* ¶ 25. Upon arrival at the residence, Plaintiff was invited inside by the woman whom he had expected to meet. *Id.* ¶ 26. Shortly after entering, Plaintiff noticed that there were hidden cameras in the apartment. *Id.* ¶ 27. The woman then went upstairs and Defendants Wohl, Burkman, "and at least three other males – one or more of whom were armed with handguns – took positions in front of [Plaintiff], to his immediate left, and on the stairs leading down to the front door." *Id.*

3

With cameras filming and in an aggressive manner, Defendants Wohl and Burkman accused Plaintiff "of coming to the residence, intending to have sex with an underage teen." *Id.* ¶ 28. Plaintiff responded that he was there to meet Sarah, a 36-year-old woman. *Id.* ¶ 29. After a heated discussion, Plaintiff told Defendants that he would call the police. *Id.* ¶ 30. In response, Defendant Burkman made a number of reassuring statements, including "this is just an innocent mixup," "[w]e're not using anything," "[d]on't worry," "[t]his is over – you'll not hear anything about it again," and "we won't use the footage if you don't go to the police." *Id.* ¶¶ 31, 33. At that point, the man blocking the door stepped aside and Plaintiff was allowed to leave. *Id.* ¶ 33.

Plaintiff then contacted the Montgomery County Police Department shortly after leaving the residence but decided not to pursue charges because Defendant Burkman had stated that Defendants would not do anything with the footage if he did not go to the police and because he was not sure of their identities. *Id.* ¶ 45. Plaintiff also immediately contacted the FBI about the incident, providing copies of the text messages with Sarah to FBI personnel. *Id.* ¶ 46. The FBI "advised Plaintiff that such communications did not make any representations of any age for 'Sarah' aside from the age listed on her Tinder profile (i.e. 36)." *Id.*

In fall of 2021, Defendants Wohl and Burkman contacted Plaintiff, using the falsely created identity of another "of-age woman," to request information about Plaintiff's work. *Id.* ¶ 47. Recognizing the woman to be Defendants, Plaintiff informed them that he had contacted the FBI. *Id.* Following this interaction, Defendant suddenly lost his job at John's Hopkins University. *Id.* ¶ 48. "Upon information and belief, this occurred because Defendants Wohl and Burkman contacted Johns Hopkins University and falsely told them that they had documentation of [Plaintiff] engaging in illegal conduct." *Id.*

On February 16, 2022, Defendants Wohl and Burkman published a video on YouTube entitled "Predator DC" – "Episode Four." *Id.* ¶ 38. The first part of the video focused on the

4

incident with Plaintiff and was labeled "Across the Border and Into a Teen." *Id.* ¶ 39. The video and Internet postings related to it included the following statements and information:

- "Our nation's capital is infested with deviants, perverts, and pedophiles of all stripes"

- The display of Plaintiff's face, first name, occupation, and location

- Reference to Plaintiff being a lawyer and member of the D.C. bar

- A photo of Plaintiff along with text referencing Johns Hopkins University

- References to Plaintiff, stating that "he comes to our sting house to have sex with an underage teen who he's just met on tinder."

*Id.* ¶ 41. In narrating the video, Defendants Wohl and Burkman made the following statements about Plaintiff:

- "his artifice may convince his young victims but it shows us" (Wohl)

- "he was coming for an underage teen" (Wohl)

- "[Plaintiff] oh little [Plaintiff] . . . you thought that by screaming and yelling you could get out of being a pedophile," "you could get out of your crimes" (Burkman)

- "We will never stop in pursuit of the truth, [Plaintiff] and the truth is, that you are a pedophile, and you are a danger to society" (Burkman)

- "Predators like [Plaintiff]" (Burkman)

- "You are nothing but a man that intended to prey upon a 16 year old girl" (Burkman)

- "You disgust me, you disgust America" (Burkman)

- "You will not stop us from exposing predators just like you"

*Id.* ¶ 42. Defendants Burkman and J.M. Burkman & Associates allegedly funded the Predator D.C. operation, paying for the use of the apartment, "as well as for the expenses associated with their having a team of persons there and various forms of video, surveillance equipment, and

computer equipment using funds from and otherwise paid through the checking account for J.M. Burkman & Associates." *Id.* ¶ 52.

Defendants Wohl and Burkman "solicited the public for funds through Predator D.C." by "publish[ing] information about Predator D.C. on the internet through which recipients could locate and access the video featuring Plaintiff." *Id.* ¶ 53. Defendants thus "once again conveyed false information through the internet in order to generate publicity and to raise money to continue to fund Project 1599." *Id.* ¶ 54.

On May 23, 2022, Plaintiff's landlord told him to immediately leave the apartment unit that he had moved into the day before. *Id.* ¶ 50. The landlord had seen Defendants' video after searching Plaintiff's name on Google. *Id.* On June 13, 2022, Plaintiff was let go from his job at an immigration law firm due to an online post about the video that appeared second in Google results when searching for Plaintiff's name. *Id.* ¶¶ 51, 106. Plaintiff's job informed him that they found the website from Plaintiff's prior landlord and that it was not safe to return to work due to threats relating to the post. *Id.* Plaintiff eventually declared bankruptcy in August 2023. *Id.* ¶ 121.

B. Procedural Background

Plaintiff filed an action against Defendants in Arlington Circuit Court on July 1, 2022. Dkt. 1 ¶ 7. On August 3, 2023, the Arlington Circuit Court granted Plaintiff's motion for voluntary nonsuit. *Id.* ¶ 8. Plaintiff initiated this civil suit on February 2, 2024, asserting the following claims against Defendants: (1) defamation; (2) business conspiracy; (3) common law conspiracy; (4) unreasonable invasion of private life and invasion of privacy – false light; (5) tortious interference with contract – business expectancy; (6) a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to 18 U.S.C. § 1962; and (7) a violation of Va. Code § 8.01-40. Dkt. 1. After receiving an extension of time to file responsive pleadings, Dkt. 15, Defendants filed a Motion to Dismiss the Complaint in its entirety for failure to state a claim and

for lack of jurisdiction. Dkt. 19. On April 19, 2024, Plaintiff filed its Opposition to Defendants' Motion to Dismiss. Dkt. 23.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the Court lacks jurisdiction over the subject matter of the action. A district court must dismiss an action over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that subject-matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

There are two ways in which a defendant may prevail on a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.* Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject-matter jurisdiction over the case apart from the pleadings. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In such a case, "[n]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.3d 884, 891 (3d Cir. 1977).

### B. Rule 12(b)(6) Standard

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

7

550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). However, "[i]n employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Prosa*, 2022 WL 394465, at *14 (quotation omitted).

### III. ANALYSIS

Defendants move to dismiss the Complaint in its entirety, contending that Counts IV and VI fail as a matter of law and that Counts I-V and VII fail to allege facts to establish subject matter jurisdiction. Dkt. 20. Given that Count VI is a federal claim under RICO, the Court will first address whether Plaintiff has stated a civil RICO claim before turning to Defendants' jurisdictional argument as to the remaining state law claims.

A. Count VI – RICO Claim

Count VI asserts a civil RICO claim, alleging that Defendants "carried out numerous instances of racketeering activity as part of 'Project 1599,'" including "thousands of instances of wire fraud as well as extortion," in violation of 18 U.S.C. § 1962(c)-(d). Dkt. 1 ¶¶ 112-13. RICO provides a private cause of action to anyone "injured in his business or property by reason of a violation of" Section 1962. 18 U.S.C. § 1964(c)). Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Thus, "Section 1962(c) prohibits the conduct of a 'pattern of racketeering activity' affecting interstate commerce." *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, No. 24-1043, 2025 WL 610305, *7 (4th Cir. Feb. 26, 2025). To plausibly allege a RICO violation under Section 1962(c), a plaintiff must "adequately plead '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *MSP Recovery Claims*, 2025 WL 610305, at *7 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Further, a plaintiff must also demonstrate that the RICO violation caused an injury to a business or property interest. 18 U.S.C. § 1964(c); *Albert v. Glob. Tel*Link*, 68 F.4th 906, 910-11 (4th Cir. 2023) (explaining that Section 1964(c), which establishes the private right of action under RICO, "requires a 'direct relation' between the plaintiff's injury and the defendant's RICO violation" (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992))).

Defendants primarily contend that Plaintiff has failed to assert a cognizable injury to a business or property interest and that Plaintiff's alleged injuries were not proximately caused by Defendants' actions. For the reasons discussed below, the Court will grant the motion to dismiss with respect to Plaintiff's RICO claim.

1. Association-in-Fact Enterprise

As noted, to state a civil RICO claim a plaintiff must plausibly allege an "enterprise" responsible for committing racketeering activity. 18 U.S.C. § 1962(c). A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise exists if there is "evidence of an ongoing organization, formal, or informal" and "evidence that the various associates function as a unit." *United States v. Mathis*, 452 F.3d 242 (4th Cir. 2019) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). The enterprise must contain, at a minimum, three structural components: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *United States v. Pinson*, 860 F.3d 152, 161 (4th Cir. 2017) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

Here, Plaintiff alleges that Project 1599, a political group created by Defendants Burkman and Wohl, is the enterprise through which Defendants conducted their racketeering activities. Dkt. 1 ¶ 20-21; Dkt. 1-3 at 5 (describing Project 1599 as "a political organization that was launched as a 'candidate vetting apparatus,' primarily targeting Democratic candidates and seeking to influence the November 2020 United States presidential election"). Plaintiff asserts that Defendants Burkman and Wohl implemented a robocall scheme through Project 1599 in 2020 to "'make shit up' and to communicate . . . false information electronically, in part to mislead voters, the larger public [sic], to generate publicity through the media, and also to raise money to continue to fund their illegal acts." *Id.* Plaintiff further alleges that Defendants continued to use Project 1599 in 2021-2022 to "'make shit up' and generate publicity and revenue" by staging and producing the YouTube video that falsely accused Plaintiff of being a pedophile. *Id.* ¶¶ 23-58.

10

Moreover, Defendants Burkman and Wohl allegedly used Defendant J.M. Burkman & Associates, LLC, and its bank account to fund their efforts. *Id.* ¶ 52.

These allegations are insufficient to establish that Project 1599 was an enterprise under RICO because they fail to show that Project 1599 operated with the longevity required by the law. The Complaint and attached exhibits indicate that Project 1599's purpose was to influence the 2020 U.S. presidential election and to generate publicity and revenue. Plaintiff's allegations suggest a relationship between Defendants within the enterprise, with Defendants Burkman and Wohl creating and directing the operations of Project 1599, as well as using Defendant J.M. Burkman & Associates to fund their activities. The Complaint further describes in detail the concerted efforts of Defendants to coordinate the robocall scheme and the production of the YouTube video in which Plaintiff is accused of being a pedophile, indicating that Defendants functioned together to further Project 1599's aims. Even so, the Complaint alleges that Project 1599 existed from at least August 2020, when the robocall scheme was executed, and continued into February 2022 with the publishing of the video featuring Plaintiff. This duration, which is less than two years, is insufficient as a matter of law to satisfy the longevity requirement under RICO. *See GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 550-51 (4th Cir. 2001) (finding duration of two years insufficient to state a RICO claim). Plaintiff has therefore failed to plausibly allege the existence of an enterprise.

2. Pattern of Racketeering Activity

In addition to an enterprise, Plaintiff must allege a pattern of racketeering activity. "Racketeering activity" is defined under 18 U.S.C. § 1961(1) to include the commission of several federal statutory and state common law offenses, known as "predicate acts." *See* 18 U.S.C. § 1961(1). Relevant here, RICO identifies "any act or threat involving . . . extortion" and "any act which is indictable under . . . [18 U.S.C.] section 1343 (relating to wire fraud)" as possible

11

predicate acts. 18 U.S.C. § 1961(1). A pattern of racketeering requires at least two related predicate acts of racketeering activity. 18 U.S.C. § 1961(5). "Racketeering acts are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Pinson*, 860 F.3d at 161 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

In support of the civil RICO claim, the Complaint alleges two occurrences of the predicate act of wire fraud under 18 U.S.C. § 1343: (1) Defendants' robocall scheme and (2) Defendants' Predator D.C. series.[2] Plaintiff also alleges extortion as a predicate act to support his RICO claim, asserting that Defendant Burkman's statements to Plaintiff constituted extortion under Maryland Criminal Code § 3-706. To establish the existence of racketeering activity, Plaintiff must adequately plead the elements of wire fraud and extortion. He has failed to do so.

Section 1343 prohibits the use of interstate wires in furtherance of schemes to defraud. 18 U.S.C. § 1343. To plead wire fraud, a plaintiff must show: (1) a scheme to defraud; and (2) the use of a wire communication in furtherance of the scheme. *See United States v. Johnson*, 149 F. Supp. 3d 678, 684 (E.D. Va. 2016). Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, "[w]hen mail and wire fraud are asserted as the predicate acts for a civil RICO claim, the standards of Rule 9(b) apply." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989). A complaint must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."

---

[2] In his Opposition, Plaintiff asserts that the Complaint alleges three separate wire fraud offenses as predicate RICO acts because Defendants faced criminal prosecution for their conduct in the robocall scheme in two states – Ohio and Michigan. Dkt. 9 at 9-10. Given that the robocall scheme was essentially the same conduct in both states, *see* Dkt. 1 ¶¶ 11, 13, the Court will view the robocall scheme as one predicate act for purposes of the RICO analysis.

*Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (citations omitted). The Fourth Circuit has "cautioned against imposing civil RICO liability for garden-variety violations of the mail and wire fraud statutes 'because it will be the unusual fraud that does not enlist the mails and wires in its services at least twice.'" *ePlus Tech., Inc. v. Aboud*, 313 F. 3d 166, 181 n.15 (4th Cir. 2002) (citing *Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000)).

Plaintiff has failed to specify with particularity what Defendants obtained from the schemes as required by *Weidman*. In the Complaint, Plaintiff alleges that Defendants violated RICO through Project 1599's development and implementation of a robocall scheme targeting thousands of African American voters across different states to pressure them not to vote in 2020. Dkt. 1 ¶¶ 10-22. Plaintiff further alleges that Defendants endeavored to generate publicity and raise money through their efforts. *Id.* ¶ 20. Based on the Complaint, however, it is unclear to the Court exactly how Defendants generated publicity or obtained money through their misrepresentations to African American voters in the robocall scheme. *See generally* Dkt. 1. Plaintiff also alleges that Defendants implemented a scheme to "solicit[] the public for funds through Predator D.C.," a series of staged and produced YouTube videos, "including use of the episode which involved Plaintiff" and in "which Defendants had falsely called [Plaintiff] a pedophile and a predator." *Id.* ¶ 53; Dkt. 23 at 12. Again, it is unclear from the Complaint how Defendants solicited the public for funds through Predator D.C. *See* Dkt. 1 ¶ 53. The Complaint explains that Defendants did so by publishing information about Predator D.C. on the internet through which recipients could locate and access the video featuring Plaintiff, but the Complaint fails to specify whether and how these unknown individuals provided Defendants with funds. *Id.* Plaintiff thus falls short of plausibly pleading wire fraud claims because the Complaint fails to state with sufficient particularity what Defendants obtained from the misrepresentations made.

13

Turning to the alleged extortion, Plaintiff alleges extortion under Maryland Criminal Code § 3-705.[3] Maryland law prohibits the intentional extortion of "money, property, labor, services or anything of value from another" by verbal threats. Md. Crim. Code § 3-705. Here, Plaintiff argues that Defendant Burkman's statement, "we won't use the footage if you don't go to the police," constitutes unlawful extortion because Plaintiff relied on it in "elect[ing] not to press charges." Dkt. 1 ¶¶ 33, 116-118. Plaintiff further contends that, because Plaintiff "elected not to press charges," Defendants were given additional time to continue to perpetrate Project 1599 – a thing of value. *Id.* ¶ 118. The Court is unconvinced. First, the allegation that Plaintiff relied on Defendant Burkman's statement in choosing not to press charges is undermined by the fact that Plaintiff immediately contacted both the Montgomery County Police Department and the FBI about the incident after leaving the residence. *Id.* ¶¶ 45-46. This indicates that Plaintiff did not rely on Defendant Burkman's statement in deciding whether to go to the police, as Plaintiff took steps to notify law enforcement anyway. Second, the decision to bring charges in a criminal case is generally within the discretion of the prosecutor, and private citizens have no legally identifiable interest in the prosecution or non-prosecution of another individual. *See Moore v. Scott*, 2024 WL 4529268, at *4 (D. Md. Oct. 18, 2024) (explaining that "the decision of whether to prosecute, and what criminal charges to bring, generally rests with the prosecutor"); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Plaintiff's claim that his decision not to pursue charges provided Defendants with more time to perpetrate Project 1559 due to "the lack of focus from the police" is speculative and unsupported by the facts. *Id.* ¶ 118. Thus, Plaintiff has failed to plausibly allege extortion as a predicate RICO act.

---

[3] Neither party contends that Maryland law should not apply. The Court will thus analyze the extortion claim under Maryland Criminal Code § 3-705 as alleged in the Complaint.

Even if Plaintiff had plausibly pled that Defendants' actions amounted to wire fraud and extortion, the alleged acts differ in purpose, results, victims, and methods of commission. As a result, they do not constitute related predicate acts that establish a pattern of racketeering activity. Regarding the robocall scheme, Defendants made false statements to African American voters with the purpose of persuading them not to vote by mail. *Id.* ¶ 54. In contrast, with Predator D.C., Defendants allegedly published a video on YouTube falsely labeling Plaintiff a pedophile and a predator. *Id.* ¶ 42. Plaintiff claims that the purpose of both schemes was to generate publicity and to raise money, but as discussed, the Complaint does not clearly explain how the robocall scheme generated publicity or money for Defendants, nor how Predator D.C. raised money for Defendants. *Id.* ¶¶ 20, 23. The Complaint thus demonstrates that the schemes differed in purpose: the robocall scheme sought to persuade African American voters not to vote, *id.* ¶ 54, while Predator D.C. was intended to generate publicity by publishing the video to YouTube, *id.* ¶¶ 42; 53. Additionally, the alleged racketeering acts differed in results and victims: the robocall scheme targeted African American voters, attempting to influence their voting behavior, whereas Predator D.C. victimized Plaintiff by falsely labeling him a pedophile and a predator. The methods of commission also varied. The robocall scheme involved transmitting recorded messages containing false information through telephones, *see id.* ¶ 15, whereas Predator D.C. allegedly involved luring Plaintiff to a residence under false pretenses, filming him while Defendants falsely accused him of being a pedophile, and publishing the footage on YouTube, *see id.* ¶¶ 24-38. Given that the Complaint fails to demonstrate the relatedness of the alleged predicate acts, the Court concludes that Plaintiff has failed to plausibly allege a pattern of racketeering activity. Plaintiff's civil RICO claim must also be dismissed for this independent reason. *See Babakaeva v. PTR Invs., Inc.*, 2022 WL 807381, at *10 (E.D. Va. Feb. 11, 2022) (dismissing RICO claim where the alleged

racketeering acts were not sufficiently related and, as a result, the plaintiffs failed to adequately allege a pattern of racketeering.), *aff'd*, 2022 WL 17103767 (4th Cir. Nov. 22, 2022).

### 3. Cognizable RICO Injury

A RICO plaintiff must allege he was "injured in his business or property by reason of a violation" of the statute. *Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 151 (4th Cir. 1987) (quoting 18 U.S.C. § 1964(c)). Applying this requirement to the Complaint, the Court asks whether Plaintiff has sufficiently alleged an injury within the meaning of the statute and whether any injury was proximately caused by Defendants' alleged RICO violations.

Plaintiff alleges that the publishing of the Predator D.C. video in which he was falsely called a pedophile caused irreparable harm to his reputation. Dkt. 1 ¶¶ 55-56. As a result of the harm to his reputation, Plaintiff lost housing, a paid internship with Johns Hopkins University, and a job with an immigration firm, as well as the money he spent to repair the damage caused by Defendants. *Id.* ¶ 119. All of these losses culminated in Plaintiff having to declare bankruptcy in August 2023. *Id.* ¶ 121. Plaintiff also claims that his "likeness is a protectable property interest under Va. Code § 8.01-40" and that the "fraudulent and illegal use of his likeness on the internet . . . caused significant damage to Plaintiff." *Id.* ¶ 120.

The Court interprets Plaintiff's injuries as reputational harm that amounts to personal injury. Moreover, Plaintiff's out-of-pocket losses appear to be a result of those personal harms. In this Circuit, neither are considered RICO injuries. "[A]llegation[s] of personal injury and pecuniary losses occurring therefrom are not sufficient to meet the statutory requirement of injury to 'business or property.'" *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995); *Dickson v. FBI Newport News Field Office*, 2016 WL 8261800, at *1 (E.D. Va. Mar. 2, 2016) (explaining that "losses which flow from personal injuries are not property under RICO"). Moreover, the property interest arising from one's likeness is an intangible property interest, *Jones*

*v. Bank of America Corp.*, 2010 WL 6605789, at *5 (E.D. Va. Aug. 24, 2010) (referring to "the intangible personal property right arising from the use of an individual's 'name and likeness'"), and "[i]njury to . . . an intangible property interest is not sufficient to confer RICO standing." *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 730 (8th Cir. 2004) (quoting *Price v. Pinnacle Brands*, 138 F.3d 602, 607 (5th Cir. 1998)). Accordingly, this Court cannot find that Plaintiff has alleged a cognizable RICO injury "in his business or property" as those terms are understood under 18 U.S.C. § 1964(c). *See Kimberlin v. Nat'l Bloggers Club*, 2015 WL 1242763, at *12 (D. Md. Mar. 17, 2015) (finding that having one's name falsely associated with crimes and false narratives was a personal injury for which RICO was not available to redress); *see also Hamm v. Rhone-Poulenc Roer Pharmaceuticals, Inc.*, 187 F.3d 941, 954 (8th Cir. 1999) (explaining that "[d]amage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)").[4]

Plaintiff has therefore not alleged facts sufficient to show he was injured in his business or property. Thus, in addition to the grounds described above, dismissal of Plaintiff's RICO claim is proper for this reason.

\*   \*   \*

Because Plaintiff has failed to plausibly allege the existence of an enterprise, a pattern of racketeering, or a qualifying RICO injury, Plaintiff has failed to state a civil RICO claim. Accordingly, the Motion to Dismiss will be granted in this regard. Additionally, the civil RICO claim was the only federal claim alleged in the Complaint. Thus, the Court must examine the remaining counts to determine whether this Court has or should continue to exercise supplemental jurisdiction.

---

[4] Given that the Court has found that Plaintiff has not alleged injury to a business or property interest, the Court need not do a proximate cause analysis.

### B. Remaining State Law Claims

The Complaint asserts six additional state law claims. The civil RICO claim was the only federal claim asserted in the Compliant. It is not clear from the face of the Complaint whether diversity jurisdiction exists, as Plaintiff does not allege the state in which Plaintiff is currently a resident. Thus, with the dismissal of the RICO claim, this Court lacks original jurisdiction over the remaining state law claims. Under 28 U.S.C. § 1367(c)(3), the Court declines to exercise jurisdiction over them. *See Crosby v. City of Gastonia*, 635 F.3d 634, 644 n.11 (4th Cir.2011) (explaining that "[a] district court enjoys wide latitude in determining whether or not to retain supplemental jurisdiction over state claims" (internal citations and quotations omitted)). Accordingly, the remaining Counts will be dismissed without prejudice to Plaintiff's right to re-file in state court should he choose to do so.

### IV. CONCLUSION

In sum, Plaintiff's civil RICO claim will be dismissed for failure to state a claim and the remaining state law claims will be dismissed because the Court declines to exercise jurisdiction over them. These particularized findings should not be interpreted to, in any way, condone Defendants' actions if proven in a court of competent jurisdiction.

Accordingly, for the foregoing reasons it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 19) is GRANTED; and it is

FURTHER ORDERED that Counts I-VII are DISMISSED WITHOUT PREJUDICE.

The Clerk is directed to forward copies of this Order to all the parties of record.

It is SO ORDERED.

Alexandria, Virginia
March 13, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge